### SAMPSON *v.* BRANDON GROCERY COMPANY.

The act approved August 17, 1903 (Acts 1903, p. 92), to regulate the sale of stocks of goods, wares, and merchandise in bulk, applies to a sale of a stock of goods in bulk by a debtor to a creditor in extinguishment, total or partial, of his debt; and such a sale, made in disregard of this act, is fraudulent and void as against other creditors of the common debtor.

Submitted July 18, 1906.—Decided February 14, 1907.

Claim. Before Judge Mitchell. Thomas superior court. November 18, 1905.

*Theodore Titus,* for plaintiff in error. *W. C. Snodgrass,* contra.

EVANS, J. The question presented by this record is whether a sale of a stock of goods in bulk by a debtor to his creditor, in partial payment or entire extinguishment of his debt, is valid, unless the sale is made agreeably to the terms of the act approved August 17, 1903 (Acts 1903, p. 92). This act provides: "Section 1. It shall be the duty of every person who shall bargain for or purchase any stock of goods, wares or merchandise in bulk, for cash or credit, before paying or delivering to the vendor any part of the purchase-price therefor, to demand and receive from the vendor thereof, and if the vendor be a corporation, then from the managing officer or agent thereof, a written statement under oath of the names and addresses of all the creditors of said vendor, together with the amount of indebtedness due or owing by said vendor to each of such creditors; and it shall be the duty of such vendor to furnish such statement. It shall further be the duty of said vendor to give

to the vendee a statement of his assets and liabilities and the cost price of the merchandise to be sold, said cost price to be arrived at by an inventory taken at the time by the seller and purchaser. Sec. 2. Thereupon it shall be the duty of the purchaser, at least five days before the completion of said purchase, or the payment therefor, to notify personally or by registered mail, each of said creditors, of the said proposed sale, the price to be paid therefor, and the terms and conditions thereof, together with a copy of the statement of the assets and liabilities as furnished him by the vendor. Sec. 3. Whenever any person shall purchase any stock of goods, wares or merchandise in bulk, and shall pay the price or any part thereof, or execute and deliver to the vendor thereof, or to his order, or to any person for his use, any promissory note or other evidence of indebtedness for said purchase-price, or any part thereof, without having first demanded and received from said vendor the statement under oath, mentioned in section 1 of this act, and without first giving to each of said creditors the notice provided for in section 2 hereof, such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent. [Section 4 provides for a penalty for a false statement by the vendor.] Sec. 5. Any sale or transfer of a stock of goods, wares or merchandise out of the usual or ordinary course of the business or trade of the vendor, or whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed, or attempted to be sold or conveyed, to one or more persons, shall be deemed a fraudulent transaction or transfer in bulk in contemplation of this act; provided, that nothing contained in this act shall apply to sales by executors, administrators, receivers, or any public officer under judicial process." Counsel for plaintiff in error insists that under the 'Civil Code, § 2697, a debtor may prefer one creditor to another, and to that end he may sell in payment of the debt, provided no surplus is reserved for the debtor's benefit, and that the act of 1903 does not apply to a sale of a stock of goods in bulk, where the debtor sells to a creditor in payment of a pre-existing debt. A casual reading of the act suggests the evil which this legislation was designed to remedy. A dishonest merchant, in failing circumstances, before its passage, by concealing his real condition from the purchaser, could dispose of his stock of goods, and receive the purchase-money,

and leave his creditors without means of collecting any part of their debts from the stock of goods. If the sale was for cash, the failing merchant could easily put the money received beyond the reach of his creditors, or if a negotiable note was taken, it could likewise be discounted, so as to prevent the creditors from collecting anything from that source. The manifest purpose of the act was to prevent the commission of such frauds. This salutary object would not be attained if sales by the debtor to the creditor in extinguishment of his debt were excepted. The act refers to sales for cash and credit; and this comprehends sales of every character. If the consideration is an acquittance of the debt, in legal effect it is a cash sale, as contradistinguished from a credit sale. Again, suppose the agreed value of the goods exceeds the creditor's debt, and the excess is paid in cash or by the giving of a promissory note, could it be said that such a transaction would fall without the statute? We apprehend not. If a sale of a stock of goods for an acquittance plus an additional consideration comes within the operation of the act, then why should a sale in extinguishment of the creditor's debt be excluded?

But it is contended that if the act of 1903 be applied to a sale of a stock of goods in bulk by a debtor to his creditor, so much of the Civil Code, § 2697, as permits a debtor to prefer a creditor by a sale without reservation of any benefit will be impliedly repealed. It is a well-recognized canon of statutory construction that a subsequent statute will not repeal a former if the two can be reconciled. Construing the act of 1903 and §2697 together, we may easily reach the conclusion that sales of stock in bulk by a debtor to a creditor, in extinguishment of his debt, in whole or in part, are still permissible, but that such sales are null and void unless there be compliance with the terms of the act of 1903.

As it is conceded that the title of the claimant depended upon the validity of the sale of a stock of goods in bulk, in disregard of the act of 1903, the lien of the attaching creditor was superior to the claim of title by the claimant. *Carstarphen Warehouse Co.* v. *Fried,* 124 *Ga.* 544.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*